We'll move on to the third case. Nationwide Property & Casualty v. Renaissance Bliss. Mr. Schoenthaler? Hello? Mr. Schoenthaler? I double-mute on, so I apologize. Good morning to the court. This is Peter Schoenthaler appearing on behalf of the appellants. I will be addressing the court for 10 minutes and reserve five for rebuttal. The first reason this court should reverse the trial court's grant of summary judgment in Pelley's declaratory judgment action is that the orders and contravention of this district court lost subject matter jurisdiction under the Declaratory Judgment Act when the insurance company in this case paid the underlying claim that was the basis of the coverage dispute in the case. The facts are somewhat relevant. The D-J action was filed October 6, 2017. It sought a single claim for relief that the insurance company had no legal obligation to provide insurance coverage for the claims asserted in the underlying lawsuit. I'm not sure I agree with you. The case does not seem moot to me because if that were the case, then how could an insurance company, while reserving its rights, ever settle a case and prevent a later judgment that might be much prior from coming into play? Because in this case they paid the settlement amount and therefore there was no case in controversy between the parties in the trial court case. Except that they reserved, they between the insured and the insurer. So how can that moot the case? Because it's different from Twin Cities. Well, it is different from Twin Cities, but it's different for a different reason. Twin Cities is different. The court in Twin Cities vacated the order and dismissed the declaratory judgment action. The court in Twin Cities permitted the allocation claim to move forward. There was no allocation claim in the underlying suit. There was purely a declaratory judgment action. Under the declaratory judgment act, you must have a case in controversy. And once the underlying action was settled through payment by the insurance company, there was no longer a case for controversy. And there was therefore no longer subject matter jurisdiction. Federal courts are courts of limited jurisdiction. The courts have determined applying, interpreting the declaratory judgment action to say that if there's no longer a case in controversy, it is mooted and there is no longer subject matter jurisdiction. Once subject matter jurisdiction is lost by the trial court, it cannot reclaim it by an agreement of the parties. And just to follow up, six months later approximately, what the amended complaint for declaratory judgment was filed. And in that, only then, six months later, did the insurance company seek reimbursement. During that six months, jurisdiction had been lost. I'd like now to turn to, so this court should reverse and amend to the district court with instructions to dismiss. I'd like now to turn to the choice of law issue. The trial court incorrectly applied Georgia law to the insurance policy of each issue rather than California law as would have been correct. Georgia follows Lex Loci contractus and- So let me ask you, as a practical matter, why does it make a difference? Because ultimately, the notice prejudice rule that California follows is part of its common law. And Georgia law says that we don't follow other states' common law. We follow our own common law. So ultimately, why does it make a difference? It seems like regardless of whether Georgia law or California law would have ultimately been the choice of law, in the end, it would have been under Georgia law regardless since we're not talking about statutory law here. Well, I beg to differ to some respect. I agree that Georgia applies other states' statutes. However, they also apply the judicial decisions authoritatively interpreting those statutes is the language that has been used. And I don't think there's- What statute governs notice prejudice rule? Well, if I may, there are two reasons that the California law applies here. Number one is the basis of the Georgia case law that says we're going to apply other states' statutes but not the identity rule. The presumption of identity rule assumes, back in the day of mail by horse, that all common law is the same across the states. However, that only applied to the first 13 colonies. I'm sorry, I have a question though with respect to that. Actually, two questions. First, it seems like you may have waived that argument since the argument wasn't raised until your reply brief in front of us. And second, even if you didn't waive that argument, the Georgia courts have applied it to Florida, have applied the rule to Florida, and Florida was neither one of the original 13 colonies nor carved from one of the original 13 colonies. So, it seems like that argument wouldn't succeed anyway. Did you want to address that? I'm not aware of the case applying, so it's difficult for me to respond as I'm not aware of that case. I will say this follows. The notice prejudice rule is not part of the common law. It is an abrogation of the common law. California adopted English common law in 1850. When they adopted it, their statute said the common law of England is adopted so far as it is not repugnant or inconsistent with the laws of this state. So, I'm sorry to interrupt again. I understand what the position is of that particular argument. But, I mean, first of all, the name of the case is not from Georgia that I'm talking about. It's from 1941. And second of all, well, actually, that's the second point. The first point is that why didn't you waive the argument? I mean, did you raise it before the reply brief in front of us? And maybe I dismissed it. Did we raise the issue of whether or not the presumption of identity rule was applicable because of the 13 colonies? Well, I mean, the law is the law. Okay. But did you raise the argument before the reply brief? I don't recall specifically, but I do not believe we did raise it in our principle brief. Okay. So, why wouldn't it be waived then? Well, I mean, it's application of the choice of law of Georgia. It's the law of Georgia as to what law should govern. Here, we have a California state entering into a contract with an Ohio company. We have the policy being delivered in California. Georgia has no interest here. But let me ask you this, even so, would you agree that if there is a case where the Georgia Supreme Court applied the presumption of identity rule to a state that was neither one of the original 13 colonies, nor a state created from one, that your presumption of identity argument fails? No, no, I would not agree with that. I'll cite the Coon of 2017 505 that expressly limits it now, granted, to the 13 colonies. Now, granted, the Supreme Court of Georgia did indicate that it was leaving the question open. But the current law in Georgia is that the presumption of identity only applies to the first 13 colonies. Obviously, California was not one of the first 13 colonies. I would also say that the statute that was your question, that in California is a group of 1,600 statutes and a comprehensive industry insurance code. And that insurance code regulates the issuance of policies in the state of California. But where is the specific provision, statutory provision, that applies to the notice prejudice rule? When you look at Coon, it talks about, you know, it has to be applied specifically. Section 554 of the California insurance code shifts the burden from the insured to the insurer and says that delay in presentation of the insurer of notice or proof of loss is waived if the insurer admits to make objections promptly and specifically on that ground. As a fundamental policy of the state of California that governs all insurance policies issued in the state, the notice prejudice rule should be applied, would be applied by the Supreme Court of Georgia in this case, because Georgia has no particular interest in a California insurance company between two citizens of other states involving property that happens to be located in the... Counsel, your time has expired. Thank you. Okay. Yes, you've saved five minutes for rebuttal. Mr. Saverin? Yes, thank you. Philip Saverin, YARNS for Nationwide in this case. Just to address a couple of points, clarify a couple of points that were made by Mr. Schainthaler. As far as the Twin City case is concerned, it of course is distinguishable because in that case the insurance company paid the claim without having an agreement with the insured to work out whether or not there would be reimbursement, or in this case partial reimbursement, depending on the outcome of the coverage case. And I wanted to clarify that even in the Twin City case, the court did not dismiss for lack of jurisdiction. What it said is that the declaration for allocation would be moot because the claim had been resolved unilaterally by the insurance company. However, it did allow the claim for recoupment to go forward. And the... I was reading from the case, it says, quote, to me we have a lot of controversy here because depending on how we rule, we're going to determine who loses $275,000, right? Correct, correct. As far as the... But my point is even on the Twin City case, I think there's... Yeah, well, which is an unpublished decision and I agree with what you've argued about it. Okay. I'm smart enough to know not to say anything more on that point then. As far as the choice of law, well, first of all, I think that there's no question that this policy is going to be construed under Georgia law because the Lex Loci Contractus rule says that you apply the law where the contract was made unless it was to be performed in a different state. What we have here is the policy was issued to California entities, but their sole assets are the Georgia property, in this case, 161-unit condo building with retail space on the first floor. That's all owned and operated by Renaissance Retail and 140 of the units by Renaissance Residential. All the endorsements refer to Georgia law. It is not a property policy. It is liability-only policy. I'm sorry, the appellant make a point in their brief of saying that the performance is where the claims are made... I mean, claims are paid, citing two first-party cases. But here, the claim was paid in Georgia because it was to the plaintiff in the underlying case. So I think even under the Lex Loci Contractus case rule, we still have it performed entirely in Georgia. There's nothing to do with California other than that's where the owners of the property happen to be. I wanted to point out that on page 33 of the appellant's opening brief, they make an important concession, I believe, which is accurate, but they say it is immaterial that the notice prejudice rule itself is not explicitly stated in California's insurance code. I think that itself dispenses with the question of whether or not, even if California law applied, whether the common law of Georgia would apply to this case, which I think is accurate. The section 554 that was referenced during the opening argument, it says very clearly there that has a caveat that if the insurer omits to make objection, which here, there was objection right away as soon as the insurer found out that the insurance principal had been to the location the day after it occurred to do an investigation. So for all those reasons, I think that the notice prejudice rule applies to this case. In the opening argument, Mr. Shainfield did not mention the application of that rule. However, I'd like to make a few comments on that. I think that once we get through the question of jurisdiction and choice of law, I don't think there's any question, but that there was an unreasonable and unexplainable delay here under the Georgia cases. The incident happened in September 2013 when the insured's own property manager was raped on the property. It was in the parking deck, the same address. Mr. Breitenbaum, who is the chief operating officer for the appellants, flew from California to Atlanta the very next day. Why? Because he was concerned about a potential claim. He spoke to witnesses, he viewed the scene, he got a police report, he collected video, he downloaded computer data, and then he spoke to his workers' comp agent who advised that, well, it's your subcontractor's employee, so therefore you don't need to be concerned about workers' compensation. Clearly, he knew about the possibility, if not the likelihood, of the claim. The appellant kept saying it was adjacent property. It was not. It was the same address. The attack was in the stairwell of the parking deck to the building. Again, the building was owned by, or the units were owned by, Renaissance Residential and the retail units on the first floor by Renaissance Retail. Both companies were owned by Renaissance Bliss. Cohen and Associates managed the assets, both residents and retail. Notice was not given until, well, it was after June 2, 2015, so just shy of two years, when insurance information was requested by the victim and the property manager. Their attorney asked for insurance information, so at that point, notice was given to Nationwide. Of course, the burden is on the insurer to show compliance with conditions, and the trigger is when an occurrence which may result in a claim, depending on the severity of the injury, as well as whether there's an objectively reasonable belief that a claim could not arise. That's the language, how it's phrased in the Forsyth case that's cited in the briefs. The suggestion that there's no duty until a claim has been asserted is not supported by the case law. Here again, the appellants clearly knew a claim could arise, and the decision not to notify was based on their investigation of the incident and conclusion that they would not be liable for the unfortunate rape. There's cases that say assessment of liability is very clear, is for the insurance company. The purpose of the notice is to let the insurance company do the investigation, make a decision about whether or not there's liability or possible liability, and attempt settlement, if possible, or at least gather the evidence. The main point that the appellants make is that, well, this was so remote that it was not foreseeable, but that's not supported by the case law. In the airport mini-mall case, the property manager knew that the tenants had been accused of selling counterfeit products. They were on notice of that, but didn't believe that they would be liable. The court said that was not a reason for the delay. In the Britt Underwriters case, the insured collected rent and leased out art studios where the injury occurred, and it was a serious injury. There was a paralysis when someone fell from a horse. They didn't think they would be liable. Again, the court said that's not reasonable. The NRI case is pretty close to this one. In that case, the insured was a general contractor, and their subcontractor's employee was injured on the job. Similar to the facts in this case, the insured spoke to their agent who said, well, if the subcontractor has workers' comp coverage, you don't need to worry about it, and the court said that was not reasonable. I'd like to contrast that with some situations where remoteness was found not to be foreseeable, or the claim was not foreseeable due to remoteness. One was the JNJ Foundation case where the insured knew there was an accident near their construction site, but there was no indication that the insured's contractors were involved. So there's no reason to think that, well, there might be a claim against us. The Newberry case that the appellants rely on a lot. There was a fight at a work party over 100 miles from the individual's home. He did not notify his homeowner's carrier, and the court said it was reasonable to believe that his...to not know that his homeowner's policy would cover it. And then there's the Brock case where there was a school bus accident within a school district, and the superintendent for the entire district was not involved in the accident, and they said it was not...it was excusable that he did not foresee that he would be personally served and personally sued for that accident. So I don't think the remoteness gets them there, especially given the severity of the incident. It was a rape on the property. The officer of the appellants flew to Atlanta to do an investigation, and he concluded that, for whatever reason, that he did not need to notify any insurance companies, and so he didn't. And I don't think that that is a reasonable excuse under any stretch of the application of the Georgia cases. So unless the court has any questions, I think that covers the points I wanted to make. Okay, Mr. Saverin. I don't hear any, so thank you for your argument. We'll hear a few minutes of rebuttal from Mr. Schoenteller. Sir, I would like to address the court's question regarding why the notice prejudice rule with respect to Kuhn and the presumption of the application notice prejudice was raised in the principal brief and was a major part of that brief. To the extent the brief did not raise Kuhn and footnote 5, that this is only that the notice...excuse me...the identity...presumption of identity rule is only applicable to the original 13 colonies does not amount to a waiver. It's just one of many reasons that the California law should be applicable in this case, and it is the law in the state of Georgia applied by the Georgia Supreme Court, and this court should follow. I will address... I want to make sure I understand this. The Supreme Court of Georgia has just left open that question, isn't that right? And it hasn't. It has not definitively held that if it's not one of the original 13 colonies, it would apply a different rule. It's just said it's left open that question, right? No, I don't think that's correct. I think the Georgia Supreme Court has said that the presumption of identity rule only applies to the original 13 colonies. That's all that it's held. It hasn't decided one way or another, though, about the other states. Well, there's no case that has applied it that I know of to any of the other states. Counsel, this is Robert Luck. Doesn't this go exactly to the question Judge Rosenbaum asked, which is the Moss case from 1941 did apply the rule to Florida, which was not part, as Judge Rosenbaum said, of the original 13 colonies or carved out from one of them. Wouldn't that go directly against what you're saying? Yes, I apologize for not being up to speed on that particular case. So I can't dispute or I can't dispute. Assume with me that the rule was applied to Florida. Would that not be problematic for your legal position, at least this part of it? Well, it would be good. You know, I would still move to the 2017 Coons case in the Georgia Supreme Court to specifically state that the law as it currently sits is that the presumption of identity applies to the original 13 colonies and has not been extended beyond that. Wasn't payment on the insurance contract made here in Georgia? Well, I mean, I don't know, honestly, where payment was made. I know that the payment of premiums were made from California. They settled with a plaintiff who lives in Georgia, and we know that because the allegations state that she lives in Georgia, right? That is probably correct. And even so, that goes to the payment and then the property itself, the only insurable property, is also in Georgia, correct? Well, right, but that's more a matter of happenstance. The policy itself provided nationwide coverage. You know, additional properties could, I mean, we looked at the intent of the parties at the time the contract was entered into. You have a California citizen. The counsel doesn't in the Georgia law state that insurance contracts covering property seeking to indemnify the insured against certain risks to the property so that a substantial portion of the performance of the insurance contract must take place in the situs of the law with regard to location of the insured risk? I would cite to the Broadman case, specifically taking a look at the South Carolina statute that said the property in South Carolina has to be, you have to apply South Carolina law, and Broadman stated the location of the property alone is not a heavy weight in favor. You know, what's good for the goose is good for the gander here. I'm not sure Broadman helps you because there, what we said was some Georgia courts have suggested that performance under a general liability policy is a payment of claims, and here, as we just discussed, the payment happened in Georgia. I concede that. Okay, thank you. I would like to discuss very briefly the third issue, which is the district court applying, substituting its judgment for the jury. Look, I'll raise, and this is always dangerous, and I acknowledge that, but I'll raise a hypothetical. For the judge to decide in this situation where the accident, the rate, let's call it what it is, occurred not in an area controlled or owned by the appellants, and that goes to their objective belief whether or not- Counselor, your time has expired. May I have 30 seconds to complete, please? 30 seconds. That goes to their state of mind, and the objective state of mind that a juror could find whether they believe that the occurrence might result in a claim. I'll give you a hypothetical of two houses in a neighborhood where an accident, similar accident, occurs near a property line. The homeowner, knowing that they don't own or control that property, never goes to their insurance homeowner's insurance company and makes a claim or alerts. Having the trial substitute there, the trial court's opinion for the jury is dangerous. Thank you very much. Thank you. We have your case.